**Helena DORR, Appellant,**

v.

**Don D. FITZER et al., Appellees.**

Court of Appeals of Kentucky.

March 21, 1975.

As Modified on Denial of Rehearing
May 23, 1975.

David O. Welch, Caldwell, Van Antwerp, Welch & Hughes, Ashland, for appellant.

John M. Williams, Gray, Woods & Cooper, Ashland, for appellees.

CULLEN, Commissioner.

Appellant Helena Dorr taught school in the Boyd County School system, under limited contracts, for the school years 1966–67, 1967–68, 1968–69, and 1969–70. In May 1970 the board of education voted not to employ her for the 1970–71 school year, and she was not employed for that year. In September 1970 she brought suit against the board and its individual members, claiming that she was entitled to a continuing contract and to employment by virtue of that contract. She prayed that she be restored to employment in a continuing-contract status, and she asked for damages. The case was submitted on the pleadings, depositions, motions and memoranda. The circuit court thereupon entered judgment dismissing the action. Mrs. Dorr has appealed from that judgment.

The determination of the issue in this case involves construction and application of KRS 160.380 and 161.740.

KRS 160.380 provides:

"All appointments * * * of * * * teachers * * * shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board. If the board of education cannot agree with the superintendent as to any legally qualified person recommended by the superintendent, the board of education may appeal to the state board of education to review the case and the decision of the state board of education shall be final * * *."

In a number of cases, *not involving continuing contract questions,* this court held that the board of education cannot reject the superintendent's recommendation for appointment of a teacher except upon a determination that the person recommended is morally unfit or educationally unqualified for the appointment. See Smith v. Beverly, 314 Ky. 651, 236 S.W.2d 914. However, it was held also that if the board votes to reject a recommended appointment, without the determination above mentioned, the rejection is valid if the superintendent thereupon withdraws the application, which withdrawal may be presumed from his recommending another appointee instead of insisting upon his initial recommendation. See Hale v. Board of Education of Calloway County, 254 Ky. 96, 70 S.W.2d 975.

The continuing-contract statute, KRS 161.740, provides that when a currently employed nontenure teacher is recommended for reemployment after teaching four consecutive years, "the superintendent shall recommend said teacher for a continuing contract, and, if the teacher is employed by the board of education, a written continuing contract shall be issued." This statute has never been construed in regard to its relation with KRS 160.380, on the specific question of whether the board cannot reject the superintendent's recommendation for a continuing contract unless the board determines that the person recommended is morally unfit or educationally unqualified.

Our task is to apply the foregoing statutes to the facts of the instant case.

Prior to the meeting of the Boyd County Board of Education scheduled for May 11, 1970, the superintendent prepared four lists of teachers, in the following categories:

"1. Teachers Eligible for Limited Contracts."

"2. Teachers Eligible for Continuing Contracts."

"3. Teachers Holding Continuing Contracts."

"4. New Teachers Recommended for Employment."

Mrs. Dorr's name was on List No. 2, along with the names of several other teachers. However, none of the lists had any language of *recommendation* connected with them, except that List No. 4, as noted above, purported to be a list of *new* teachers "recommended" for employment.

On the day scheduled for the meeting the superintendent fell ill and was hospitalized. The meeting was held, however, without him, and an administrative employe of the system appeared in his place. The board treated the lists of names as recommendations and proceeded to vote on the appointments. From the list entitled "Teachers Eligible for Continuing Contracts" the board voted to employ all those listed except Mrs. Dorr and one other teacher. After the meeting adjourned the board chairman and the administrative employe went to see the superintendent in the hospital, and told him of the board's decision concerning Mrs. Dorr and the other rejected teacher. The superintendent then stated his acquiescence in and agreement to that action. On the basis of that acquiescence and agreement, the administrative employe wrote a letter to Mrs. Dorr, the following day, notifying her that she was not to be employed for the 1970–71 school year. The superintendent continued thereafter to concur in that disposition of his initial recommendation of Mrs. Dorr.[1]

■■ We are not persuaded that KRS 161.740 is subject to the same interpretation as that given to KRS 160.380, of requiring the board of education to accept the superintendent's recommendation absent a determination of moral unfitness or educational unqualification. The provision of KRS 161.740 that "if the teacher is employed by the board" a continuing contract shall be issued means that the board has an open choice whether or not to make the employment that will result in a continuing contract. This meaning was strongly indicated by the terms of KRS 161.740 prior to the 1964 amendment of that section; then, it provided that the teacher recommended for a continuing contract would receive a continuing contract unless the recommendation was rejected by a *four-fifths* vote of the board. Obviously this contemplated rejection without regard to cause, for if cause existed there would be no reason to require a four-fifths vote. And we find nothing in the words of the statute in its present form to require the construction that cause now is required to reject a recommendation for a continuing contract.

■ Mrs. Door's contention that she was deprived of a *vested right* to a teaching position without notice and hearing is not sustainable because KRS 160.380 is not applicable.

Moore v. Babb, Ky., 343 S.W.2d 373, is not in point, because there the teacher had been employed for the *fifth* year before the board undertook to deny her a continuing contract, the employment for the fifth year arising by implication from a statute which since has been repealed.

The judgment is affirmed.

All concur except JONES and STERNBERG, JJ., who dissent.

STERNBERG, Justice (dissenting).

I must differ with the majority opinion and join with Justice Jones in his vigorous dissent.

Appellant had taught for four consecutive years in the Boyd County School District. At the May 7, 1970, meeting of the School Board of Boyd County, the superin-

---

1. The superintendent later recommended another teacher as a replacement for Mrs. Dorr, and the board hired that teacher.

tendent certified a list of the personnel to be employed. Appellant was included in a list of teachers certified as "teachers eligible for continuing contracts". The superintendent, by reason of illness, was not able to attend this board meeting. The record of the board of this meeting discloses that:

"On motion of Mr. Tackett, seconded by Mr. Baker and carried, the Board employed the certified personnel listed below as recommended by the superintendent with the exception of Helena Dorr and Wilmer C. Browning. Voting yes: Mr. Tackett; Mr. Baker; Mr. Willman, with the exception of Rhonda Cooksey, niece; Mr. Fitzer, with the exception of Doretha May, Sister-in-law; abstaining: Mr. Cooksey . . . ."

The superintendent never withdrew, directly or indirectly, his recommendation of appellant.

K.R.S. 161.740 pertains to the eligibility of teachers for continuing service contracts. This statute was amended in 1964; however, the effect of the amendment was not to change the entitlement of a teacher to a recommendation for a continuing service contract, nor did the amendment change the responsibility of the superintendent in his obligation to recommend persons for continuing service contracts. The only change that the amendment brought about was the number of negative votes required of the school board members to defeat a recommendation of the superintendent. So much of KRS 161.-740 as pertains to the subject is as follows:

"(1) Teachers eligible for continuing service status in any school district shall be those teachers who meet qualifications listed in this section:

\* \* \* \* \* \*

(b) When a currently employed teacher is recommended for re-employment after teaching four (4) consecutive years in the same district, or after teaching four (4) years which shall fall within a period not to exceed six (6) years in the same district, the year of present employment included, the superintendent shall recommend said teacher for a continuing contract, and, if the teacher is employed by the board of education, a written continuing contract shall be issued."

In Ritchie v. Dunn et al., 297 Ky. 410, 180 S.W.2d 284 (1944), this court had before it the right of a teacher to a continuing service contract. In commenting, this court stated:

"The Teachers' Tenure Act provides that upon the recommendation of the Superintendent of Schools a teacher eligible for continuing service status shall be re-employed. \* \* \*."

In Moore v. Babb, Ky., 343 S.W.2d 373 (1960), we said:

"The core of the case is whether or not the plaintiff had a 'continuing contract status' on March 31, 1959, when she was notified she would not be re-employed. \* \* \*."

Mrs. Moore had been employed for five consecutive years at the time she was so notified that she was not to be reemployed. After discussing KRS 161.740 and its application, this court said:

"When the last limited contract was given Mrs. Moore in 1957, she had been teaching three consecutive years. Giving her a two-year limited contract at that time was tantamount to recognizing that at the end of the first year of that contract (when she would have been teaching four years) she would be entitled under the law to a continuing service contract. So, it must be said that the appellant had achieved a continuing service status when notified in March, 1959, that her services would be discontinued; hence, she was entitled to continue teaching \* \* \*."

In Whitley County Board of Education v. Meadors, Ky., 444 S.W.2d 890 (1969),

this court again considered the right of a teacher to a continuing service contract, as follows:

"In March 1963, near the end of her fifth year of service under limited contracts as a teacher in the Whitley County school system, Fayrene Meadors was notified that she would not be employed for the 1963–64 school year. Claiming that she had continuing service status and thus was entitled to employment for the 1963–64 year and thereafter, Mrs. Meadors brought suit in the fall of 1963 against the board of education, its individual members, and the superintendent, asking that she be awarded a continuing contract beginning with the 1964–65 school year and * * *."

The trial court found that Mrs. Meadors was entitled to a continuing contract, and this court affirmed.

In Estill County Board of Education v. Rose, Ky., 518 S.W.2d 341 (1974), the circuit court held that Rose was entitled to either a continuing service status, generally referred to as tenure status (KRS 161.740), or a limited contract for the school year 1972. The Estill County case, supra, differs from the subject action in that Rose had resigned and had not taught for one year. However, "Prior to his resignation, Rose had acquired tenure status by meeting the qualifications enumerated in KRS 161.-740." In disposing of the issue, this court stated:

"When the limited contract for the school year 1970–71 was given Rose, he had been teaching for more than the four years required and was entitled under the law to a continuing-service contract. When Rose was given the letter of May 14, 1971, he had already achieved a continuing-service status. His employment could be terminated only by the board's complying with the requirement of KRS 161.780. Cf. Moore v. Babb, Ky., 343 S.W.2d 373 (1961)."

The facts in the four above-cited cases may differ with the subject action, but it is a difference without a distinction. This court has consistently held that a teacher possessing the necessary requirements and having been recommended by the superintendent is entitled to a continuing service contract of employment.

When the appellant, who was a currently employed teacher, was recommended for reemployment after she had taught four consecutive years in the school district, she was entitled to a written continuing service contract.

The board of education had a discretion in that "If the teacher is employed by the board of education, a written continuing contract shall be issued." (Emphasis added) This discretion must not be exercised in an arbitrary manner. Kentucky Constitution § 2.

The status to which appellant had attained represented a right protected to her by the due process clauses of the Kentucky and United States Constitutions. (Ky. Const. § 11, U.S.Const., 14th Amend.)

The appellant was not advised of any reason that she was not employed for the school year 1970–71, but was bluntly, by a letter, told that she would not be rehired. This arbitrary action of the board is the very thing that was sought to be overcome by the Teachers' Tenure Act. Equity regards as done that which ought to have been done.

Appellant was recommended by the superintendent for a continuing service contract, and no just cause has been shown, or attempted to be shown, that she is not entitled to all of the rights and privileges the same as if she had actually had a written document evidencing a continuing service contract. The board could only defeat her right to teach by resorting to the provisions of KRS 161.790.

I would reverse the judgment of the trial court with directions to grant summary judgment for Helena Dorr.

Accordingly, I dissent.

JONES, Justice (dissenting).

In my view, the majority opinion is based neither on the law, nor is it supported by the facts. The result is not only harsh, it is cruel. In a long line of cases this court has consistently adhered to the tenets of the teacher tenure act. The majority opinion evinces a radical departure from previous opinions of this court which strictly construed the tenure and retirement act.

Helena Dorr taught four consecutive years in the Boyd County School District. On May 7, 1970, the superintendent prepared an agenda for a board meeting to be held on May 11, 1970. One of the express purposes of that meeting was to employ personnel for the 1970–1971 school year. Attached to the agenda was a certified list of personnel to be employed. Included in the list was a category described as "teachers eligible for continuing contracts." Under this designation, Helena Dorr and twelve other teachers were listed.

When the board met on May 11, 1970, each of the five board members had the certified list before them. They considered the list of teachers to be those recommended by the superintendent. Some of the members so testified. All the members testified that there was no deviation in the procedure from other years. The only difference was that the superintendent was ill and unable to attend the meeting.

The superintendent recommended Helena Dorr for a continuing contract. This is reflected not only by the evidence of the board members, but also by the records of the May 11, 1970 meeting. The superintendent complied with the statute which provides:

"(1) Teachers eligible for continuing status in any school district . . . (b) . : . after teaching four years . . . the year of present employment included, the superintendent *shall* recommend said teacher for a continuing contract, and, if the teacher is employed by the board of education, a written continuing contract shall be issued. . . ." KRS 161.740(1)(b).

Thus, the superintendent complied with the statute; the board did not. The record of the board proceedings of May 11, 1970, Order No. 175, states:

"On motion of Mr. Tackett, seconded by Mr. Baker and carried, the Board employed the certified personnel listed below as *recommended by the superintendent* with the exception of Helena Dorr and Wilmer C. Browning. Voting yes: Mr. Tackett; Mr. Baker; Mr. Willman, with the exception of Rhonda Cooksey, niece; Mr. Fitzer, with the exception of Doretha May, Sister-in-law; abstaining: Mr. Cooksey. . . ."

The evidence is conclusive that the superintendent at no time directly or indirectly withdrew his recommendation of Helena Dorr. The contrary is indicated by his testimony:

"Q 102. Did you ever withdraw . . . Mrs. Dorr's name from the list that you gave to the board?

A. Not in the sense that I made the statement that I withdrew their names.

Q 103. Did you ever furnish the board a list in May, 1970, which did not have Mrs. Dorr's name on it and Mr. Browning's name on it?

A. They were both included on the list of those eligible for continuing contracts.

Q 105. You didn't take them off even in the hospital or wherever you were?

A. No, I never did strike out their names from those eligible for continuing contracts."

The fact that Helena Dorr's name was not withdrawn is buttressed by the official records of the board at a meeting on May 21, 1970. The purpose of that meeting was to reconsider the action of the board at its May 11, 1970 meeting. The superintendent was present. He was eloquent by his silence. According to the evidence, he "made no comment whatsoever." If he had withdrawn his recommendation, it would have been appropriate for him to have said so.. Helena Dorr's principal and other school personnel were present and,

"Each school personnel member present at the meeting (May 21, 1970), was asked to make voluntary statements concerning their feelings and observations regarding the teaching performance of . . . Mrs. Dorr. Resulting statements from the school personnel involved were generally favorable."

Thus, Helena Dorr was recommended by the superintendent. The recommendation was never withdrawn. The board should then have appealed to the state board of education for a review of the action. KRS 160.380. When Helena Dorr was legally recommended by the superintendent, and the recommendation was not withdrawn she acquired a vested right to teach. She was deprived of that right by the illegal action of the board. Once a teacher has been legally recommended and there has been no withdrawal of that recommendation, that teacher has acquired a vested right to teach. Cf. Wisdom's Adm'r v. Sims, 284 Ky. 258, 144 S.W.2d 232 (1940).

The board made a feeble attempt to comply with KRS 161.750(2). That provision applies only to teachers who are not eligible for continuing contracts. However, if Helena Dorr had been employed under a limited contract, the notice was wholly insufficient. The statute provides that, "any teacher employed under a limited contract and ineligible for a continuing contract shall at the expiration of such limited contract be deemed re-employed . . . unless the employing board shall give such teacher written notice on or before the fifteenth of May of its intention not to re-employ him . . . ." The board did not comply with this requirement. Paul H. Adams, a Federal Coordinator, who called himself "assistant to the superintendent," wrote a letter to Helena Dorr notifying her of the action of the board at its May 11, 1970 meeting; that she would not be reemployed for the 1970–1971 school year. There is nothing in the record to indicate that any member of the board ever notified Helena Dorr of the board's action. On the contrary, the board members testified they gave no such notice to Helena Dorr.

I am of the opinion that the trial court was in error in holding that Mrs. Dorr was not entitled to a hearing to challenge the board's failure to issue her a continuing contract. Since the action of the board deprived her of a vested property right, she was entitled to a hearing to satisfy the procedural requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Property interests are not created by the constitution. They are created and defined from an independent source such as a state law which was violated by the board in this case. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives; reliance that must not be arbitrarily undermined. It is the purpose of the constitutional right to a hearing to provide an opportunity to vindicate those claims. Board of Regents v. Roth, 408 U. S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

" . . . a state-employed teacher who has a right to re-employment under a state law, arising from either an express or implied contract, has in turn, a right guaranteed by the Fourteenth Amendment to some form of prior administrative or academic hearing on the cause." Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Helena Dorr was not even shown the courtesy of a hearing under KRS 161.790;

which provides the manner of the termination of a contract of a teacher who has continuing status. There was no evidence that Mrs. Dorr was insubordinate; immoral of character of conduct unbecoming a teacher; that she had physical or mental disability; or that she was inefficient, incompetent, or had neglected her duty. In fact, Mrs. Dorr was afforded *no opportunity* for any type of hearing. The evidence reveals that she had a Masters' Degree, and her principal for the four years she taught at the Summit Elementary School gave her a very favorable report at the May 21, 1970 meeting of the board. His report was bolstered by statements of other school personnel.

This court has said:

"It is well established that a governmental body may not deal in a purely arbitrary manner with the compensation or work assignment of its employees." Snapp v. Deskins, Ky., 450 S.W.2d 246 (1970).

No teacher in any school system should be buffeted by the whim and caprice of either the superintendent or the board. In my view, the majority opinion shakes the very foundation of teacher tenure. Its effect would permit any board of education to deny any teacher who had achieved continuing status the vested right that teacher had attained.

I would reverse the judgment of the trial court with directions to grant summary judgment for Helena Dorr.

Accordingly, I dissent.