943 F.2d 51
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Burl HANSHAW, Carolyn Johnson, Barbara Fannin, Kathy Boggs
and Ernie Conn, Plaintiffs-Appellees,
v.
BOARD OF EDUCATION OF CARTER COUNTY, KENTUCKY, a corporate
entity, and Clifford Roe and Guy Underwood, individually,
and Dwayne Cross in his official capacity as Superintendent
of the Carter County Schools, Defendants-Appellants.
 No. 90-6583.
 United States Court of Appeals, Sixth Circuit.
 Sept. 5, 1991.
Rehearing and Rehearing En Banc Denied Oct. 17, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a denial of qualified immunity in an action brought under 42 U.S.C. § 1983 for alleged violations of the plaintiffs' rights under the First and Fourteenth Amendments. We conclude that the First Amendment rights in question--basically the right of certain categories of public employees not to be discharged because of their political views--were clearly established, and we shall affirm the denial of immunity on this ground without reaching the Fourteenth Amendment question.
 
 
 2
 * During the 1988-89 school year, plaintiffs Kathy Boggs, Ernie Conn, Barbara Fannin, Burl Hanshaw, and Carolyn Johnson were employed in various support capacities at three elementary schools in Carter County, Kentucky. On June 3, 1989, Harold Holbrook, Superintendent of the Carter County Schools, recommended to the Carter County Board of Education that the plaintiffs be offered new contracts for the 1989-90 school year. By a unanimous vote, the five-member board decided not to approve the appointments--allegedly because the plaintiffs had openly supported opponents of the defendant board members at election time. The plaintiffs have not worked for the Carter County Schools since the board's adverse decision.
 
 
 3
 Seeking injunctive and monetary relief, the plaintiffs filed suit in federal court against the school board, the current superintendent, and school board members Clifford Roe and Gary Underwood. Messrs. Roe and Underwood were sued in their individual capacities.
 
 
 4
 On cross motions for summary judgment the district court decided, among other things, that Roe and Underwood were not entitled to qualified immunity. Pursuant to Mitchell v. Forsyth, 472 U.S. 511 (1985), these defendants perfected an interlocutory appeal.
 
 II
 
 5
 The appellants contend that the district court erred in denying them qualified immunity because it was not clearly established in June of 1989 that the board's actions violated the plaintiffs' constitutional rights. They further contend that the unanimity of the board's decision means that Roe and Underwood could not individually have violated the plaintiffs' rights, and that the board's decision had no legal effect in any event.
 
 
 6
 The doctrine of qualified immunity protects from personal liability "all [public officials] but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An official is entitled to qualified immunity unless his conduct violated "clearly established statutory or constitutional rights...." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In deciding whether a right is "clearly established," we look to the law as of the time of the alleged offense, examining relevant statutes, decisions of the Supreme Court and the federal courts of this circuit, and decisions of the highest state court in the state in which the case arose. Eugene D. v. Karman, 889 F.2d 701, 706 (6th Cir.1989), cert. denied, 110 S.Ct. 2631 (1990).
 
 
 7
 Messrs. Roe and Underwood deny that they violated any clearly established First Amendment rights. They argue as follows:
 
 
 8
 --The school board did not discharge the plaintiffs, but merely refused to rehire them;
 
 
 9
 --In June of 1989 the law of this circuit was as set forth in Messer v. Curci, 881 F.2d 219 (6th Cir.1989) (en banc), vacated, 110 S.Ct. 3233 (1990), which held that a state may refuse to rehire a person on the basis of political considerations;
 
 
 10
 --In light of Messer v. Curci, it was not clearly established that the hiring decisions at issue here could not be made on the basis of political considerations.
 
 
 11
 The argument fails because its first premise is faulty. At the time in question the hiring procedure to which the parties were subject was established by a Kentucky statute that read as follows:
 
 
 12
 "All appointments, promotions and transfers of principals, supervisors, teachers and other public school employees shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board. If the board of education cannot agree with the superintendent as to any legally qualified person recommended by the superintendent, the board of education may appeal to the state board of education to review the case and the decision of the state board of education shall be final." Ky.Rev.Stat. § 160.380 (1988).
 
 
 13
 The highest court in Kentucky has consistently interpreted this statute as giving a board of education no power to reject a superintendent's recommendation except upon a determination that the person recommended is morally unfit or educationally unqualified for the appointment. Dorr v. Fitzer, 525 S.W.2d 462, 463 (Ky.1975). When the superintendent recommends someone who is neither morally unfit nor educationally unqualified, the person so recommended
 
 
 14
 " 'acquires a vested right to teach, or perform the duties of his employment, and to receive the emoluments of the employment, as certainly as if a contract had been executed with the approval of the board. * * * Thus it will seem the law implies a contract between the parties, specific performance of which will be enforced by the court, and for the breach of which damages may be allowed.' " Smith v. Beverly, 314 Ky. 651, 236 S.W.2d 914, 917 (Ky.1951) (quoting Amburgey v. Draughn, 288 Ky. 128, 155 S.W.2d 740, 742 (Ky.1941)).
 
 
 15
 In the case at bar there is no dispute about the plaintiffs' moral fitness or qualifications. It appears, therefore, that the plaintiffs were deprived of vested employment rights when the board refused to approve their appointments.
 
 
 16
 The defendants contend that Amburgey and its progeny support rather than undermine their appeal. If the plaintiffs had a vested right to work and be paid, they say, the board's refusal to approve the appointments was of "utter legal insignificance." It is undisputed that the plaintiffs have not worked in the Carter County Schools since the board rejected the superintendent's recommendation, however, and it was this rejection that put them out of work.[1]
 
 
 17
 Because the plaintiffs' employment rights had vested, our decision in Messer v. Curci is not in point. Messer held that Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980), which declared that certain types of employment could not be terminated on the basis of political considerations, did not apply in a failure-to-rehire situation. In so holding we noted that the employees who were not rehired had "no continuing employment status" and that state law gave them "no preference for appointment to such positions...." Messer, 881 F.2d at 221. In the case at bar, by contrast, the employees had a vested right to reemployment from the moment the superintendent made his recommendation to the school board. The board's rejection of the recommendation terminated an employment contract implied by law, and the board's action was thus tantamount to a discharge. Given the Elrod and Branti decisions, the right not to be discharged for partisan political reasons was clearly established in June of 1989. (Whether the plaintiffs could still have asserted a constitutional violation even if the discharges had not been attributed to the exercise of their First Amendment rights is a question we need not reach at this point.)
 
 
 18
 Roe and Underwood argue that they did not act under color of state law, within the meaning of § 1983, because their two votes, standing alone, would not have been sufficient to terminate the plaintiffs' employment. Under § 1983, however, liability extends to anyone who participated in a deprivation of constitutional rights under color of state law. See Stevenson v. Koskey, 877 F.2d 1435, 1438-1439 (9th Cir.1989). Roe and Underwood do not deny that they voted against the plaintiffs; it is therefore clear that they participated in the alleged deprivation.
 
 
 19
 The district court's denial of qualified immunity is AFFIRMED.
 
 
 
 *
 The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Counsel for the defendants suggested at oral argument that the Amburgey line of cases was overruled in Burkhart v. Board of Education of Harlan County, 649 S.W.2d 855 (Ky.Ct.App.1983). But even if Burkhart is inconsistent with Amburgey and its progeny (a question on which we express no opinion), an intermediate Kentucky court has no authority to overrule the Commonwealth's highest court. See Rule 1.030(8)(a), Rules of the Kentucky Supreme Court (1988)