The **BOARD OF REGENTS OF KENTUCKY COMMUNITY AND TECHNICAL COLLEGE SYSTEM; and Michael B. McCall, In His Official Capacity as President and Chief Executive Officer of the Kentucky Community and Technical College System, Appellants**

v.

Renee **FARRELL; Samir Azer; Ginger S. Backer; Ann Boyd; Jerome M. Ennis; Connie Hill; David Hume; Todd Johnson; Kenneth Jones; Kim Klump; Cindy Sue Owen; Mary Pawlowski; Tabathia Roark; Terri Wes-**

ton; Robert M. Williams–Neal; Brian S. Mullins; Stephanie B. Davis; Lisa Morse; Jean P. Abney; Ann E. Arnold; Mary Cannon; Melissa Cantrell; Neil Carrington; Jacqueline L. Day; Mary Beth Gay; Barbara Harris; Marilyn B. Holderman; Jennifer W. Leith; Ginger A. Mitchell; Genise Orberson; Carla J. Prater; Vikki S. Rehberg; Karen Schulz; Jennifer Sinclair–Hutchins; Byron Wilson; David F. Pepper; Carla Raley–Wallace; Barry Porter; Amye L. Toms; Vicki Rollins; Charles W. Ludwig; John Shelburne; Marsha Bledsoe; Chalmer L. Cloud; Larry Johnson; And Charles Dennis Lawrey, Appellees

and

Steven L. Beshear, In His Official Capacity As Governor of the Commonwealth Of Kentucky; Timothy Longmeyer, In His Official Capacity As Secretary of the Kentucky Personnel Cabinet; Joseph U. Meyer, In His Official Capacity As Secretary of the Kentucky Education and Workforce Development Cabinet; Terry Holliday, In His Official Capacity As Commissioner of the Kentucky Department Of Education; J. Michael Brown, In His Official Capacity As Secretary Of The Kentucky Justice and Public Safety Cabinet; And Lori H. Flanery, In Her Official Capacity As Secretary of The Kentucky Finance And Administration Cabinet, Appellants

v.

Renee Farrell; Samir Azer; Ginger S. Backer; Ann Boyd; Jerome M. Ennis; Connie Hill; David Hume; Todd Johnson; Kenneth Jones; Kim Klump; Cindy Sue Owen; Mary Pawlowski; Tabathia Roark; Terri Weston; Robert M. Williams–Neal; Brian S. Mullins; Stephanie B. Davis; Lisa

Morse; Jean P. Abney; Ann E. Arnold; Mary Cannon; Melissa Cantrell; Neil Carrington; Jacqueline L. Day; Mary Beth Gay; Barbara Harris; Marilyn B. Holderman; Jennifer W. Leith; Ginger A. Mitchell; Genise Orberson; Carla J. Prater; Vikki S. Rehberg; Karen Schulz; Jennifer Sinclair–Hutchins; Byron Wilson; David F. Pepper; Carla Raley–Wallace; Barry Porter; Amye L. Toms; Vicki Rollins; Charles W. Ludwig; John Shelburne; Marsha Bledsoe; Chalmer L. Cloud; Larry Johnson; And Charles Dennis Lawrey, Appellees.

Nos. 2012–CA–001367–MR, 2012–CA–001480–MR.

Court of Appeals of Kentucky.

May 30, 2014.

Rehearing Denied Sept. 2, 2014.

Stephen G. Amato, Brittany B. Koch (argued), Lexington, KY, for Appellants, Board of Regents of Kentucky Community and Technical College System; and Michael B. McCall, In His Official Capacity As President and Chief Executive Officer of The Kentucky Community and Technical College System.

Dinah T. Bevington (argued), Frankfort, KY, for All Other Appellants.

JoEllen S. McComb (argued), Lexington, KY, for Appellees.

Before LAMBERT, MAZE, And MOORE, Judges.

*OPINION*

MOORE, Judge:

The above-captioned appellants appeal a declaratory judgment entered in favor of the above-captioned appellees by the Franklin Circuit Court. For the reasons specified below, we affirm in part and reverse in part.

### RELEVANT FACTUAL AND PROCEDURAL HISTORY

The general background of this case was summarized by the circuit court as follows:

House Bill 1 ("HB 1"), the Executive Branch Budget Bill for the 2010–2012 biennium, was enacted June 11, 2010. The bill contained the "process and procedure" to be followed "in the event that the fiscal situation of the Commonwealth requires that the Executive Branch place employees on furlough." The authority to implement a furlough was given by the General Assembly to the Executive Branch, "[i]n response to requests by the Executive Branch for maximum flexibility in regard to personnel matters." *2010 Extra. Sess. Ky. Acts ch. 1, Part IV, 11.* As discussed further below with regard to the "Certification of Fiscal Necessity," the Governor was required in HB 1 to impose multi-million dollar cuts to the Executive Branch budget as a device to allow the General Assembly to pass a balanced budget without either increasing revenue or enacting cuts to specific programs.

The term "furlough," as defined by HB 1, is "the temporary reduction of hours an employee is scheduled to work by the Appointing Authority within a pay period." *2010 Extr. Sess. Ky. Acts ch. 1, Part IV, 11(a)(3).* HB 1 required Kentucky's Personnel Cabinet Secretary to develop and implement the furlough plan for Executive Branch employees and required the following in the furlough plan: all employees be placed on furlough for the same number of hours during a calendar month; that any contract employees compensated on an hourly basis would be prohibited from performing similar services while a state employee in the work unit is placed on furlough; and that employees be noti-

fied at least seven days prior to the date of the furlough. *Id.* at 11(c)(1), (6), (9). As provided for by HB 1, a furlough plan was developed and implemented by former Personnel Cabinet Secretary Nikki Jackson on or about July 9, 2010, in the form of emergency regulation 101 KAR 5:015. This regulation was approved by the Governor and was subsequently promulgated as a regular, non-emergency regulation at 101 KAR 5:015. The furlough regulation required each Executive Branch Cabinet to develop a furlough plan to be implemented by that Cabinet and the appointing authority. It also required that all state Executive Branch employees be furloughed for a total of six (6) working days over the course of the 2010–11 fiscal year. The Executive Branch Cabinets relevant to this case, the Education and Workforce Development Cabinet and the Justice and Public Safety Cabinet, each submitted furlough plans, which were approved by the Personnel Secretary.

A finding of "lack of funds" was the required condition precedent to imposing furloughs under HB 1. "Lack of funds" was defined in the furlough provision of HB 1 as "current or projected deficiency of funding to maintain current or projected levels of staffing and operations of state government in a fiscal year." *2010 Extra. Sess. Ky. Acts ch. 1,* *Part IV 11(a)(4).* A "lack of funds" was certified by State Budget Director Mary E. Lassiter on August 24, 2010 in a Certification of Fiscal Necessity.

The appellees in this matter are four groups of state employees who filed a declaratory action in Franklin Circuit Court to challenge the 2010–2011 furloughs described above, as implemented by the Education and Workforce Development Cabinet and the Justice and Public Safety Cabinet. The first group consists of seventeen teachers employed at the Kentucky School for the Blind ("KSB").[1] The second consists of eighteen teachers employed at the Kentucky School for the Deaf ("KSD").[2] The third consists of five teachers employed at Area Technology Centers ("ATC").[3] And, the fourth consists of six teachers assigned to the Department of Corrections from the Kentucky Community and Technical College System ("KCTCS").[4]

The first three groups of these teachers (respectively the "KSB," "KSD," and "ATC" appellees) are employed in institutions attached to and part of the Education and Workforce Development Cabinet, and they are all Executive Branch employees. These appellees also argued—for the same reasons—that they should not have been furloughed for any of the six days contemplated in HB 1, or, alternatively, that they

---

1. The individuals composing this group are appellees Renee Farrell, Samir Azer, Ginger S. Backer, Ann Boyd, Jerome M. Ennis, Connie Hill, David Hume, Todd Johnson, Kenneth Jones, Kim Klump, Cindy Sue Owen, Mary Pawlowski, Tabathia Roark, Terri Weston, Robert M. Williams–Neal, Brian S. Mullins, and Stephanie B. Davis.

2. The individuals composing this group are appellees Lisa Morse, Jean P. Abney, Ann E. Arnold, Mary Cannon, Melissa Cantrell, Neil Carrington, Jacqueline L. Day, Mary Beth Gay, Barbara Harris, Marilyn B. Holderman, Jennifer W. Leith, Ginger A. Mitchell, Genise Oberson, Carla J. Prater, Vikki S. Rehberg, Keren Schulz, Jennifer Sinclair–Hutchins, and Byron Wilson.

3. The individuals composing this group are appellees David F. Pepper, Carla Raley–Wallace, Barry Porter, Amye L. Toms, and Vicki Rollins.

4. The individuals composing this group are appellees Charles W. Ludwig, John Shelburne, Marsha Bledsoe, Chalmer L. Cloud, Larry Johnson, and Charles Dennis Lawrey.

should not have been furloughed on September 6, 2010.

The fourth group (the "KCTCS" appellees) are not employed by the Executive Branch, but were considered by the Executive Branch to be subject to the furloughs described in HB 1 for reasons discussed more fully within the context of our analysis, below. They also argued, albeit for different reasons, that they should not have been furloughed for any of the six days contemplated in HB 1.

We will discuss the specifics of the arguments offered by the appellees within the context of our analysis, below; suffice it to say that the circuit court ultimately granted summary judgment in favor of the appellees, finding as a matter of law that none of these four groups were properly subject to any of the six furlough days contemplated in HB 1. The circuit court also enjoined the appellants from imposing any additional furloughs upon these appellees. These appeals followed.

## STANDARD OF REVIEW

Summary judgment serves to terminate litigation where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03. Summary judgment should be granted only if it appears impossible that the non-moving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 480 (citing *Paintsville*

*Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)).

## ANALYSIS

We begin our analysis with the ground primarily relied upon by the circuit court for declaring the KSB, KSD, and ATC appellees exempt from HB 1 furloughs; namely, that HB 1 violated Sections 2 and 183 of the Kentucky Constitution. The circuit court's reasoning was as follows:

The Plaintiffs' last and most compelling argument is that HB 1 treats the Commonwealth's similarly situated teachers disparately. Teachers hired by local Boards of Education, consisting of the vast majority of the Commonwealth's elementary and secondary school teachers, were exempted from the furlough authority in HB 1. However, elementary and secondary school teachers employed by the Executive Branch's Department of Education, notably the Kentucky School for the Deaf and Kentucky School for the Blind, were furloughed pursuant to HB 1. This disparate treatment occurs, the Plaintiffs argue, despite the undisputed fact that the teachers perform practically identical duties. Thus, the Plaintiffs argue, this disparate treatment is unconstitutionally arbitrary and irrational, in violation of the requirements of Section 2 of the Kentucky Constitution.

. . . .

Section 2 of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty, and property of freemen exists nowhere in a republic, not even the largest majority." Section 2 has been interpreted as "a concept ... broad enough to embrace both due process and equal protection of the laws, both fundamental fairness and impartiality ...". *Pritchett v. Marshall*, 375 S.W.2d 253, 258 (Ky.1963). In the

context of disparate application of a social or economic policy to similarly situated individuals, there need be only be [sic] a rational relationship to a legitimate state end. *Commonwealth Natural Resources and Environmental Protection Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718, 725 (Ky.2005). The Court finds that there is no rational reason to furlough the teachers of KSB and KSD when all other teachers of primary and secondary students in Kentucky are exempt from furloughs. The furlough plan, as it applies to these teachers and schools has the perverse effect of denying the blind and deaf students at KSB and KSD the right to a full 187 day school calendar, a right that is protected for all other elementary and secondary students in Kentucky. The teachers of the blind and deaf students are penalized for working in schools that are governed by the Department of Education and state school board rather the [sic] a local board of education, although their duties are identical. The Court finds that this disparate treatment amounts to invidious discrimination in violation of Section 2 of the Kentucky Constitution.

Moreover, in the field of public education, the Supreme Court has mandated that laws that adversely effect [sic] the efficient operation of Kentucky public schools are subject to more exacting scrutiny. As the Court explained in *Rose v. Council for Better Educ., Inc.*, "[W]e are ever mindful of the immeasurable worth of education to our state and its citizens, especially to its young people. The framers of our constitution intended that each and every child in this state should receive a proper and adequate education, to be provided for by the general assembly." *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186, 190 (Ky.1989). "[E]du-

cation is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms." *Brown v. Board of Education*, 347 U.S. 483, 493 [74 S.Ct. 686, 98 L.Ed. 873] (1954).

The legislature, without a doubt, took the mandate of the *Rose* case into consideration in protecting the public schools from the effects of furloughs in the 2010–12 state budget. The Court has no doubt that failure to extend those protections to KSB and KSD was an oversight that resulted from the fact that these two relatively small schools are unique in that their operation is governed by the Department of Education and the state Board of Education, rather than by local school boards. Nevertheless, the students, faculty and staff at state operated elementary and secondary schools are entitled to the same legal protection in the state budget that was extended to all other school systems. There is no legitimate state purpose for furloughing the KSB and KSD Plaintiffs, while protecting all other elementary and secondary teachers

from furloughs. Accordingly, the furloughs, as applied to the faculty and staff of KSB and KSD, violate Section 183 of the Kentucky Constitution.

■ Any reference to the ATC appellees is notably absent from the circuit court's opinion, as it appears above. The circuit court entered a subsequent order explaining that its reasoning applied equally to the ATC appellees, and that they had been inadvertently omitted. As indicated above, the circuit court's first ground for finding HB 1 unconstitutional as applied to the appellees related to Section 183 of the Kentucky Constitution, which provides "The General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the State." The circuit court reasoned that by empowering the Executive Branch to furlough instructors from KSB, KSD, and ATC, the General Assembly had violated this specific constitutional mandate.

This ground was not actually raised by the appellees. Moreover, it is incorrect.

■ The circuit court labored under the misapprehension that KSB, KSD, and ATC institutions qualified as "common schools." They do not. "Common schools," as the term is used in the Kentucky Constitution, means a "school taught in a district laid out by authority of the school laws, under the control of trustees elected under those laws, by a teacher qualified according to law to teach." *Hodgkin v. Board for Louisville & Jefferson County Children's Home*, 242 S.W.2d 1008, 1010 (Ky.1951); *see also* Kentucky Revised Statutes (KRS) 158.030(1), providing in relevant part:

No school shall be deemed a "common school" or receive support from public taxation unless the school is taught by a certified teacher for a minimum school term as defined by KRS 158.070 and every child residing in the *district* who satisfies the age requirements of this section has had the privilege of attending it.

(Emphasis added.)

■ As the circuit court's opinion points out, KSB and KSD are operated by the Department of Education and State Board of Education. And, a school operated by the State Board of Education cannot be a "common school" because a common school cannot exist without a common school district. *Hodgkin*, 242 S.W.2d at 1010; *see also Butler v. United Cerebral Palsy of Northern Ky., Inc.*, 352 S.W.2d 203, 207 (Ky.1961) (noting that institutions such as the Kentucky Industries for the Blind, Mayo State Vocational School, and Northern Kentucky State Vocational School are not within the common school system); *see also* Kentucky Attorney General Opinion (Ky.OAG) 84–374,[5] stating:

It may be noted that there are references to "public schools" in our Kentucky school laws. The Kentucky schools for the deaf and blind are important primary examples of such schools. These schools are also under the broad general control and management of the State Department of Education and State Board of Education, but they are not "public common schools."

In short, HB 1 did not implicate and therefore could not have violated Section 183 of the Kentucky Constitution.

Secondly, the circuit court determined that HB 1 was unconstitutional as applied

---

5. While we are not bound by opinions of the Attorney General, this Court can afford them great weight. *Louisville Metro Dept. of Corrections v. King*, 258 S.W.3d 419, 421–22 (Ky. App.2007) (citation omitted). Our review of this OAG opinion reveals that the OAG's interpretation of the law on this point is carefully considered, clearly stated, and correct.

to the appellees because, as it reasoned, HB 1 had somehow interfered with the fundamental right of students to receive an education. As noted, the circuit court held that "The furlough plan, as it applies to these teachers and schools has the perverse effect of denying the blind and deaf students at KSB and KSD the right to a full 187 day school calendar, a right that is protected for all other elementary and secondary students in Kentucky."

The appellees admit in their brief, however, that they did not raise and had no standing to raise any argument below regarding the fundamental right of students to receive an education, or regarding any rights belonging to the schools in which they taught. Indeed, the appellees have never sought to represent the interests of anyone other than themselves in this litigation.

■ With that said, the arguments the appellees actually did raise with respect to Section 2 of the Kentucky Constitution involved a purely economic right, *i.e.*, their right to work, and to be paid for working, during the period of time they were furloughed from the state-run educational institutions where they were respectively employed. They characterized their first argument in this vein as an equal protection challenge;[6] specifically, they contended that the appellants had discriminated against them because teachers employed in the nearly 200 local school districts

across Kentucky were not similarly furloughed.

■ Inasmuch as this could be considered a constitutional challenge based upon equal protection guarantee within Section 2, it necessarily fails. As a general matter, the purpose of equal protection is to keep governmental decision makers from treating differently persons who are in all relevant respects alike. *Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 465 (Ky. 2011). Here, when the Executive Branch implemented its budget, its budgetary decisions affected the appellees because the appellees are Executive Branch employees. However, the Executive Branch's budgetary decisions could not have "treated" teachers employed in the nearly 200 local school districts across Kentucky *at all*, let alone in some different fashion. This is because local school district teachers are not Executive Branch employees and are not, therefore, subject to or affected by the budgetary decisions of the Executive Branch.[7],[8]

■ The appellees' second argument with respect to Section 2 asserted a procedural due process violation. The appellees believe that their property interests in their Executive Branch positions entitled them to more than what 101 Kentucky Administrative Regulation (KAR) 5:015 Section 1(5)(b) provided (*i.e.*, a written notification by the Appointing Authority "at least seven (7) calendar days prior to the

---

**6.** As noted in the circuit court's opinion above, Section 2 of the Kentucky Constitution is broad enough to embrace the traditional concepts of both equal protection of the law and due process. *Kentucky Milk Marketing and Antimonopoly Com'n v. Kroger Co.*, 691 S.W.2d 893, 899 (Ky.1985).

**7.** As explained in *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky.2001), "public schools are the responsibility of the state, and the General Assembly has established the Kentucky Board of Education, KRS 156.070, and the local

school boards, KRS 160.160, as agencies through which it implements its constitutional mandate, much as the Executive Branch of government delegates many of its responsibilities to its cabinets."

**8.** Incidentally, the appellees avoid discussing a logical corollary to their argument, *i.e.*, whether their hours of employment must likewise be reduced in the event of a furlough in a local school district.

date of furlough").[9] The appellees contended below and continue to contend in this appeal that HB 1 unconstitutionally deprived them of their right to administratively appeal their furloughs to agencies such as the State Personnel Board, the Kentucky Technical Education Personnel Board, or teacher tribunals impaneled pursuant to KRS 163.032(2)(a) and KRS 161.790.[10]

This argument assumes due process entitled the appellees to such a right. Both the United States and Kentucky Constitutions protect a person against deprivation of his or her property interests without due process of law. A person's legitimate claim of entitlement to continued employment is a property interest. *See Romero v. Administrative Office of Courts,* 157 S.W.3d 638, 640 (Ky.2005). Nevertheless, property interests are not created by the constitution. They are created and defined from existing rules or understandings that stem from independent sources such as state law. *See Dorr v. Fitzer,* 525 S.W.2d 462, 468 (Ky.1975). Thus, to define the extent of the process that was due to the appellees regarding the furloughs, we must first turn to the rules, understandings, and state law that established the appellees' property rights in their government employment.

In their complaint, the KSB and KSD appellees identified the source of their property rights as "the terms of KRS 163.032 and the Teachers' Tenure Act (KRS 161.720 et seq.)." The ATC appellees made general reference to "the protections provided under the terms of KRS Chapter 151B" and "780 KAR Chapter 3." [11] Generally speaking, these statutes and regulations include salary schedules listing certain numbers of days of work and certain levels of pay. They demonstrate that the appellees' property interests in their various government employments entitle them to a right of due process where for-cause terminations or disciplinary actions are threatened. *See, e.g.,* KRS 161.790 and 151B.055. They also provide certain rights regarding layoffs. *See, e.g.,* 151B.085.

However, neither set of appellees has identified anything in these statutes and regulations demonstrating a right to an administrative hearing to contest a furlough, which is by definition not a termination for cause, a disciplinary action, or a layoff. Neither set of appellees contests that budget reductions made by the respective branches of government consistent with the provisions of the enacted branch budget bills passed by the General Assembly are presumably appropriate. *See Legislative Research Com'n v. Brown,* 664 S.W.2d 907, 926 (Ky.1984); *see also Gering v. Brown Hotel Corp.* 396 S.W.2d 332 (Ky.1965); *Lovelace v. Commonwealth,* 285 Ky. 326, 147 S.W.2d 1029

---

9. This regulation was enacted in conformity with Part I(A)(11)(c)(9) of HB 1, which required the furlough plan developed and implemented by the Secretary to include "Notice to the employee of the furlough by the Appointing Authority at least seven days prior to the date of the furlough[.]"

10. Part I(A)(11)(d) of HB 1, which is the subject of this particular argument, provides: A furlough implemented in accordance with this section shall not be considered a penalization of the employee for the purposes of KRS Chapters 16, 18A, and 151B, and shall not be appealable to the State Personnel Board, the Kentucky Technical Education Personnel Board, or the Department of Kentucky State Police Personnel Board[.]

11. In their brief, the appellees also argue that their rights arise "by contract." The appellees have not included their contracts in the record, they do not explain whether their contracts included any protections or rights in addition to those provided by statute, and, thus, we need not consider this point further.

(1941). Neither set of appellees contests that the various branches of government have the authority to adjust the salaries of its employees at any time to meet fiscal objectives. *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d 682, 693 (Ky.2010).

■ More to the point, even if the appellees could identify any statute or regulation that would otherwise have given them a right to administratively appeal a furlough, the General Assembly has the authority to suspend the effect of any such statute. *See Baker v. Fletcher*, 204 S.W.3d 589, 592 (Ky.2006). It clearly used that authority in unmistakable terms with regard to the furloughs at issue in this matter. In sum, the appellees have a property right in their various employments, but, with respect to the furloughs authorized by HB 1, their property rights did not entitle them to anything beyond the written notice specified in 101 KAR 5:015 Section 1(5)(b).

■ Aside from their arguments relating to due process and equal protection, the appellees raise three additional arguments as alternative bases for affirming the circuit court's judgment either in part or in whole. The first of these arguments deals with Sections 49, 50, and 171 of the Kentucky Constitution, which together authorize and require the General Assembly to raise revenues sufficient to pay the debts and expenses of government. *See generally Dalton v. State Prop. & Bldg. Comm'n*, 304 S.W.2d 342, 347–51 (Ky. 1957); *State Budget Comm'n v. Lebus*, 244 Ky. 700, 51 S.W.2d 965 (1932). In their brief, the appellees argue that these sections of the Kentucky Constitution "demand that any budget passed by the General Assembly should be balanced, not that the Assembly should provide tools [*i.e.*, the furlough authority specified in HB 1] so that other branches of the government might do their best to work towards a balanced budget."

As an aside, the circuit court rejected this argument, holding in relevant part:

[T]his Court does not interpret these sections of the Constitution as precisely limiting the Legislature's budget policy tools. The furlough plan was a tool provided to the Executive Branch to reduce appropriations. Because the furlough plan functioned to limit appropriations, HB 1 effectively created a balanced budget, albeit by delegating broad authority to the Governor to cut the budget because it was obvious at the time of enactment that revenue would be inadequate to meet appropriated expenditures. Nevertheless, the legislature has broad powers over appropriations, and the Supreme Court has indicated that legislation involving the budget is entitled to great deference. *See Fletcher v. Commonwealth*, 163 S.W.3d 852 (Ky.2005).

We adopt the circuit court's holding with respect to the appellees' argument. We would also emphasize the Supreme Court of Kentucky's statement in *Commonwealth ex rel. Armstrong v. Collins*, 709 S.W.2d 437, 443 (Ky.1986), that

The General Assembly is mandated to operate the financial offices of the Commonwealth under a balanced budget. If revenues become inadequate, the General Assembly must be empowered to use adequate devices to balance the budget.

A reading of the Kentucky Constitution convinces this Court that the furloughs at issue in this matter qualify as one of the "adequate devices to balance the budget" contemplated in *Armstrong*. Therefore, we likewise reject the appellees' argument.

■ Next, the KSB, KSD, and ATC appellees argue that, even if it was proper for the General Assembly to grant the

Executive Branch furough authority, they were not actually "furloughed" within the meaning of HB 1 when the Executive Branch purported to furlough them on September 6, 2010.[12] We agree.

As noted, HB 1 empowered the Executive Branch to "furlough" certain of its employees, defining the term (and also the term "reduction in hours") to mean "the temporary reduction of hours an employee is scheduled to work by the Appointing Authority[13] within a pay period[.]" Based upon this authority, the appellants argued below and continue to argue here that they were therefore empowered to "furlough" the KSB, KSD, and ATC appellees on September 6, 2010, i.e., the Labor Day holiday. In further support, the appellants argue: 1) lawfully enacted budget bills are capable of suspending the effect of statutes that would otherwise prohibit Labor Day from being considered a mandatory work day;[14] 2) other Executive Branch employees, such as correctional officers, state police, and health care and social workers, are often scheduled to work on Labor Day;[15] 3) in spite of Kentucky's longstanding practice to the contrary, nothing in KRS 18A.190 or KRS 151B.040(1)(f) require state holidays to be paid holidays; and 4) by furloughing the appellees on Labor Day, rather than on the preceding Friday (September 3, 2010) as with all other non-exempt Executive Branch employees, there was a minimal impact upon educational instruction hours in KSD, KSB, and ATC institutions.

The last of the appellants' above arguments makes the least sense. The appellants are essentially suggesting that *every* non-exempt executive employee could have been "furloughed" on Labor Day, and that their motive behind furloughing the KSD, KSB, and ATC appellees on this holiday was to save money while causing as little disruption to the affected institution as possible. By this logic, we are left to wonder why the Executive Branch did not attempt to furlough *all* of its non-exempt employees on Labor Day—a day when most government offices would not have been open anyway and the remaining non-

---

12. The appellees raised this argument below, but the circuit court deemed addressing it a moot point in light of its ultimate resolution of this matter.

13. Relevant to this case, HB 1 also defined "Appointing Authority" to mean " 'Appointing authority' as defined in KRS 18A.005(1) and 151B.010(1)."

14. A budget bill may "temporarily suspend or modify the operation of existing statutes" but only during the effective period of the budget bill. *Beshear v. Haydon Bridge Co., Inc.*, 304 S.W.3d at 701; *Commonwealth, ex rel. Armstrong v. Collins*, 709 S.W.2d 437, 445 (Ky. 1986) (suspension or modification of statute by budget bill provision "is temporary only, expiring at the end of the biennium"). As it goes, the appellants' argument is directed at two statutes in particular: 1) KRS 2.110(2), which provides "[n]o person shall be compelled to labor on the first Monday in Septem-

ber (Labor Day) by any person"; and 2) KRS 18A.190(1)(f), which likewise provides that state offices shall be closed and state employees shall be given a holiday on Labor Day.

15. HB 1 actually required these types of Executive Branch employees to be specifically exempted from furlough. Part I(A)(11)(c)(4) directed the Secretary of the Personnel Cabinet to develop and implement a furlough plan that included:

A provision that would allow for the exemption of employees in specific job classifications directly responsible for the care or safety of inmates or residents in 24 hour correctional, juvenile justice, or mental health facilities, as requested and certified by the Secretary of the Justice and Public Safety Cabinet or the Secretary of the Cabinet for Health and Family Services and as approved by the Secretary of the Personnel Cabinet[.]

exempt executive employees were not expected to work. We are also left to wonder why instead of doing so the Executive Branch not only furloughed those remaining non-exempt executive employees on a typical *work* day, but also proceeded to pay those remaining non-exempt executive employees for doing no work on Labor Day.

Chasing this logic any further is unnecessary, however, because the balance of the appellants' arguments miss the point. The issue presented is not, as the appellants have framed it, whether the appellees *could* have been scheduled to work on Labor Day by an Appointing Authority. It is not whether certain *other* classifications of Executive Branch employees were scheduled to work on Labor Day by an Appointing Authority. It is simply whether *the appellees were scheduled* to *work* on Labor Day by an Appointing Authority.

As the appellees point out, their Appointing Authority did *not* schedule any work for them to perform on September 6, 2010, because Labor Day was a holiday under the KSB, KSD, and ATC 2010–2011 school calendars. Also, the KSB, KSD, and ATC appellees are salaried employees, not hourly employees. Their respective salaries contemplated and were based upon a certain number of work days per year. Like a Saturday or a Sunday, Labor Day was never considered to be one of those work days. Consequently, the appellants could not have exercised the authority to "furlough" the appellees within the authority granted under HB 1 when they purported to do so on Labor Day. Instead, they simply paid the appellees less for doing exactly the same amount of work. Thus, to the extent that the circuit court determined that it was improper for the KSB, KSD, and ATC appellees to have been furloughed on September 6, 2010, we affirm.[16]

▮ The final issue on appeal concerns the group of appellees comprised of KCTCS instructors who were assigned to work at Department of Corrections (DOC) institutions. The circuit court's opinion describes some of the circumstances and arguments surrounding this issue:

> The KCTCS Plaintiffs are teachers employed at the following state correctional facilities: Pewee Valley Education Center (Plaintiff Ludwig), Western Kentucky Education Center (Plaintiff John Shelburne), LaGrange Education Center (Plaintiffs Marsha Bledsoe, Larry Johnson), Eastern Kentucky Branch Campus (Plaintiff Chalmer Cloud), Luther Luckett Education Center (Plaintiff Charles Dennis Lawrey). All of the facilities are adult correctional institutions operated by the Kentucky Department of Corrections. Plaintiffs were KCTCS faculty members assigned to these DOC facilities under a Memorandum of Agreement signed June 23, 2010, and effective July 2, 2010, between KCTCS and the Department of Corrections. Plaintiffs argue that these KCTCS Plaintiffs are not employed within the Executive Branch of state government, and thus could not be furloughed pursuant to HB 1. Defendants argue that these Plaintiffs are functionally employees of the Department of Corrections and thus can be furloughed. Ultimately, there is a[sic] no factual disagree-

---

16. Appellees alternatively argue that any of their pay deriving from the Labor Day holiday-because it did not derive from the performance of work, let alone work scheduled by an Appointing Authority-fell under the general purview of a "benefit otherwise due the employee" which Part I(A)(11)(e) of HB 1 specifically forbade the appellants from revoking. In light of how we have already resolved this issue, it is unnecessary to address this contention.

ment as to the status of these KCTCS Plaintiffs, but the parties dispute the legal effect of the assignment of these teachers by KCTCS to DOC. The Memorandum of Agreement (MOA) states that "[t]hese employees shall be managed by DOC in accordance with KCTCS policies and procedures." *Memorandum of Agreement, June 23, 2010, subsection 1.*

This is the extent of how the circuit court framed the arguments presented, but its framing was incomplete. The circuit court's opinion critically omits *why* the DOC believed it was empowered to furlough, under the authority of HB 1, what was admittedly a group of non-Executive Branch employees. In doing so, the DOC relied solely upon Part I(A)(11)(c)(6) of HB 1, which required the furlough plan developed and implemented by the Secretary to include:

> A provision that would prohibit any contract employee, or otherwise non-state employee, who is compensated on an hourly basis, from performing similar services during the time that a state employee in the work unit for which the contract applies is placed on furlough[.]

The DOC reasoned that the KCTCS instructors were "contract employee[s]" within the meaning of this provision because they taught at DOC institutions under the authority of a contract, namely, the June 23, 2010 Memorandum of Agreement. The DOC believed that the KCTCS instructors assigned to teach at its institutions were "performing similar services" as the instructors employed by the DOC who also taught at those institutions. Also, the

DOC believed that if it furloughed its own instructors, but did not "prohibit" the KCTCS instructors from teaching on those designated furlough days, it would violate the mandate of HB 1. For these reasons, the DOC believed it was required to exercise what it perceived as its HB 1 furlough authority against the KCTCS instructors. And, it purported to do so by notifying KCTCS that the KCTCS instructors would not work on the furlough days designated for state employees and that it would accordingly reduce its payroll allotment for the KCTCS instructors by 2.7%. KCTCS, in turn (and because, as it represents in its own brief, it had no other assignment for the KCTCS instructor appellees), notified these KCTCS instructors that they would have those days off without pay.

Also omitted from the circuit court's opinion was the KCTCS appellees' primary argument regarding why any furlough implemented against them under the purview of HB 1, Part I(A)(11)(c)(6), was illegal: even if HB 1, Part I(A)(11) did constitute a proper grant of furlough authority, and even if they could be considered "contract employees" who were "compensated" by the Executive Branch,[17] the terms of the furlough authority still did not apply to them because they were not *hourly* employees, but rather *salaried* employees paid on a monthly basis. The KCTCS appellees also asserted two other arguments. First, they asserted what appears to be a contractual argument, *i.e.*, that the DOC breached the terms of the MOA by unilaterally deciding to reduce its payroll allotment to KCTCS for the KCTCS instructors by 2.7%.[18] Lastly, the KCTCS

---

**17.** The KCTCS employees were not "compensated" by the Executive Branch; at least, not directly. According to the June 23, 2010 Memorandum of Agreement, they were instead "aligned with a KCTCS college for payroll and benefits processing," and the DOC was responsible for reimbursing KCTCS on a

quarterly basis for all expenses associated with KCTCS employees assigned to the DOC.

**18.** The two provisions referenced by the KCTCS appellees in this regard are Part II, sections 1 and 2. The former provides:

appellees argued the same equal protection claim asserted by the KSB and KSD appellees, *i.e.*, that Section 2 of the Kentucky Constitution had been violated because, unlike teachers in local public school districts, they had been furloughed.[19]

With the above in mind, we now return to the remainder of the circuit court's opinion relating to the KCTCS appellees. The circuit court held:

> The Court finds there is no rational basis for treating KCTCS faculty who are assigned to DOC differently from all other KCTCS faculty with regard to personnel policies, including furloughs, and that the MOA requires such equality of treatment. In light of the MOA, which was signed be [sic] DOC after enactment of H.B. 1, the Court holds that DOC has a binding legal commitment to extend to these faculty members the same personnel rights to which all other KCTCS faculty members are entitled.

In short, the circuit court appears to have held that even if the DOC did have the authority to furlough the KCTCS instructors teaching at its institutions, it was nevertheless impermissible for the DOC to have done so in this instance because: 1) other KCTCS instructors working in non-DOC institutions were not also subject to being furloughed and this amounted to an equal protection violation; and, 2) as a matter of contract law, the terms of the MOA precluded it in any event. The first

of these two bases was never asserted by the KCTCS appellees. Moreover, the entirety of the circuit court's reasoning is misplaced because it assumes, incorrectly, that the furlough authority described in HB 1 could have applied to the KCTCS appellees.

■ Part I(A)(11)(c)(6) of HB 1, cited as the sole authority for furloughing the KCTCS appellees, applied to "contract employee[s], or otherwise non-state employee[s], who [are] compensated on an *hourly basis* [.]" (Emphasis added.) The appellants' interpretation of this provision either ignores the phrase "hourly basis" entirely, or treats it as being synonymous with a salaried or monthly basis. It is improper to simply ignore the phrase "hourly basis" because, where legal interpretation is concerned, "no part should be construed as 'meaningless or ineffectual.'" *Lexington–Fayette Urban County Government v. Johnson*, 280 S.W.3d 31, 34 (Ky.2009) (citing *Brooks v. Meyers*, 279 S.W.2d 764, 766 (Ky.1955)). Furthermore, it is equally improper to construe the phrase "hourly basis" as being synonymous with a salaried or monthly basis because HB 1 does not define "hourly basis" at all; and, the plain meaning of "hourly basis" is incompatible with those other terms. *See, e.g.*, BLACK'S LAW DICTIONARY (7th ed.1999), page 1337 (defining "salary" as "An agreed compensation for services—esp. professional or semiprofessional services—usu. paid at regular intervals on a yearly basis, as dis-

---

KCTCS faculty and staff electing to remain in the employment of KCTCS and be assigned to the DOC shall be governed by KCTCS policies and procedures, provided they are not in conflict with DOC's safety and facilities management policies and procedures. Where there is a conflict between KCTCS and DOC, then DOC's safety and facilities management policies and procedures shall prevail. These employees shall be managed by DOC in accordance with KCTCS policies and procedures.

The latter provides:
> For payroll and benefits processing and faculty senate elections, employees electing to remain in the employment of KCTCS, will be aligned with a KCTCS college.

19. The circuit court did not address this claim as asserted by KCTCS. However, this claim is as meritless as the identical claims asserted by the KSB and KSD, and for the same reasons discussed above.

tinguished from an hourly basis."); *see also Monumental Life Insurance Company v. Department of Revenue*, 294 S.W.3d 10, 19 (Ky.App.2008) (explaining that when construing a statute, a court should "use the plain meaning of the words used in the statute").

The furlough authority described in HB 1 did not apply to the KCTCS appellees, and it was unnecessary for the circuit court's reasoning to go any further. Therefore, we affirm the circuit court's ultimate judgment in favor of the KCTCS appellees, albeit for a different reason.

### CONCLUSION

For the reasons specified above, we affirm the Franklin Circuit Court's judgment with respect to the KCTCS appellees. We also affirm the circuit court's judgment with respect to the ATC, KSB, and KSD appellees, to the extent that it found these appellees were improperly furloughed on September 6, 2010. We reverse the remainder of the circuit court's judgment.

ALL CONCUR.