**Affirmed and Majority and Dissenting Opinions filed July 18, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00550-CV

## MELISSA SHULTZ ON BEHALF OF ZACHARY TAYLOR SHULTZ AND THEIR TWO MINOR CHILDREN, T.S. AND A.S., Appellant

## V.

## LONE STAR ROAD CONSTRUCTION, LTD., Appellee

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-57989**

# MAJORITY OPINION

A passenger in a pickup truck traveling on a highway suffered terrible injuries when a metal tow hook shattered the truck's windshield and struck him in the head. The passenger's wife filed this suit on her own behalf and on behalf of her injured husband and their children, asserting a negligence claim against a company that was performing road construction work at the time of the accident. The trial court granted the company's summary-judgment motion. To raise a

genuine fact issue on causation, the summary-judgment evidence must raise a genuine fact issue as to whether the tow hook originated from the highway's left shoulder, in the company's work area. Concluding that the summary-judgment evidence does not raise a genuine fact issue on causation, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Zachary Taylor Schultz ("Zachary")[1] was a passenger in a pickup truck (hereinafter the "Truck") driven by his co-worker James Freeman. The men were en route from San Antonio to Houston for a business meeting. While traveling east on Interstate 10 toward Houston, Zachary suffered catastrophic injuries when a five-pound metal tow hook ("Tow Hook") shattered the Truck's windshield and struck Zachary in the head.

Zachary's wife Melissa, on Zachary's behalf, on her own behalf, and on behalf of their two minor children ("Schultz") filed suit against Williams Brothers Construction Company and appellee Lone Star Road Construction, Ltd.

At the time of the accident, Lone Star was performing work under a contract with the Texas Department of Transportation for the construction of four "direct connectors" linking Interstate 10 and State Highway 99. Williams Brothers was also performing work under a contract with the Texas Department of Transportation for the construction of "direct connectors" in an area to the east of Lone Star's construction work.

Schultz alleged the following theories of negligence: (1) premises liability, (2) assumption of negligence duty, (3) negligence per se, and (4) negligent hiring. Schultz also alleged gross negligence and sought to recover exemplary damages.

---

[1] To avoid confusion with other members of the Schultz family, we refer to Zachary by his first name.

2

Schultz sought to recover loss-of-consortium damages on her own behalf and on behalf of the couple's two children.

In its summary-judgment motion, Lone Star asserted various grounds including the following:

(1) Schultz has no evidence of any of the elements of her premises-liability theory of negligence, including: (a) that Lone Star had actual knowledge of an alleged danger (such as the presence of the Tow Hook in an area controlled by Lone Star), and (b) that Lone Star's alleged breach proximately caused the injuries alleged;

(2) Schultz has no evidence of any of the essential elements of a claim based on a negligent-hiring, negligent-training, or negligent-supervision theory of negligence;

(3) Schultz has no evidence of a violation of any statute or regulation by Lone Star that would support Schultz's negligence-per-se theory of negligence;

(4) Schultz has no evidence of either of the two essential elements of gross negligence;

(5) The summary-judgment evidence proves as a matter of law that Lone Star did not breach any negligence duty;

(6) The summary-judgment evidence proves as a matter of law that there is no "proximate causal connection" between any action or inaction by Lone Star and the injuries sustained; and

(7) The summary-judgment evidence proves Lone Star's affirmative defense under section 97.002 of the Civil Practice and Remedies Code as a matter of law.

In its summary-judgment motion, Lone Star asserted that Schultz cannot prove where the Tow Hook originated, let alone that the Tow Hook came from a Lone-Star-controlled area. Lone Star stated that there is no evidence that any action or inaction by Lone Star was a proximate cause of the injuries alleged.

In Schultz's original response in opposition to Lone Star's summary-judgment motion, Schultz asserted that a genuine fact issue precluded summary-judgment based on the summary-judgment evidence Schultz submitted, including

the opinions of John M. Orlowski and Dr. Michael D. Freeman, two experts Schultz retained. Orlowski opined that "[i]t is essentially certain that the [Tow Hook] that caused [Zachary's] injuries came from an overpass above, and did not come off a vehicle operating on the same level as the vehicle in which [Zachary] was riding." According to Orlowski, "[o]ther than falling from above, there is no other feasible way for the [Tow Hook] to achieve the velocity and trajectory necessary to have caused [Zachary's] unfortunate injuries." Orlowski concluded that "[t]here is no foreseeable mechanism that could cause a tire to eject a heavy metal object to a sufficient height that it would fall and strike a vehicle at an angle of between 19 and 25 degrees from the vertical."

Based on his investigation, Dr. Freeman concluded that "the most probable source of the [Tow Hook] that struck [Zachary] was a nearby overhead structure." According to Dr. Freeman, "[a]n analysis of prior reports of similar events resulting in serious injury indicate[s] that nearly 90% result from objects that were dropped or fell from an overpass or some other elevated structure." Dr. Freeman concluded that "there is a complete lack of any other plausible explanation for the facts surrounding [Zachary's] injury." In Dr. Freeman's opinion, "it does not even appear that it would be physically possible for the [Tow Hook] to have been propelled into the windshield of [Zachary's] vehicle from contact by the tire of another vehicle."

The trial court granted Schultz's motion to continue the summary-judgment hearing. The parties conducted discovery. Schultz settled all of the claims against Williams Brothers, but did not settle with Lone Star. Schultz then filed an amended summary-judgment response superseding the prior response. In the amended response, Schultz no longer relied upon any testimony or opinions from Orlowski or Dr. Freeman. Instead, Schultz relied upon the affidavit testimony of

4

Schultz's expert Edward Carrick. In the amended response, Schultz contended that the Tow Hook originated from the left-hand shoulder of the eastbound side of Interstate 10 in an area in which Lone Star allegedly controlled the shoulder (hereinafter the "Left Shoulder"). Schultz asserted that a passing vehicle "kicked up" the Tow Hook. Schultz asserted that Carrick's testimony raised a fact issue as to whether the Tow Hook originated from the Left Shoulder. Schultz relied upon Carrick's opinion that the Tow Hook originated approximately 45 feet from the point of impact with the Truck. Schultz also relied upon Carrick's conclusion that the Tow Hook did not come from above the Truck, from the active lanes of traffic, or from an area to the right of the Truck.

Schultz attached to the amended summary-judgment response voluminous summary-judgment evidence, including expert reports from Dr. Harry Smith and from Richard Tonda, two experts designated by Lone Star. In his report, Dr. Smith opined that (1) "[t]he likely road location for the incident was a mile or more before the centrum of the intersection of [Interstate 10 and State Highway 99]"; and (2) "[t]he [Tow Hook] likely was kicked up by [Interstate 10] westbound traffic and came across the median barrier to graze the rear edge of [the Truck's] hood and strike the [Truck's] windshield." Tonda disagreed with the opinions of Orlowski and Dr. Freeman. In his report, Tonda stated that (1) "[i]t is in fact, possible to demonstrate that [an object like the Tow Hook] can be picked up by a spinning tire and projected distances of over 100 feet and to heights of over 10 feet"; and (2) "[t]here is no basis in a physical analysis of the incident to assume that the [Tow Hook] necessarily originated above the roadway. . . ." Neither Dr. Smith nor Tonda concluded that the Tow Hook originated from the Left Shoulder, and Schultz does not assert that the report of either expert raises a genuine issue of fact on this point.

5

The trial court granted Lone Star's summary-judgment motion without specifying the grounds. The trial court approved Schultz's settlement with Williams Brothers and rendered a final judgment.

## II.   ISSUES AND ANALYSIS

On appeal, Schultz asserts broadly that the trial court erred in granting summary judgment and mentions three subsidiary issues:

> (1) Did Lone Star owe and breach a duty to use reasonable care to keep the Left Shoulder safe under Texas common law and its contract with the Texas Department of Transportation?
>
> (2) Does the summary-judgment evidence raise a genuine fact issue as to proximate cause?
>
> (3) Was Lone Star's alleged conscious refusal to clean the Left Shoulder an act of gross negligence?[2]

On appeal, Schultz asserts that the testimony of expert witness Carrick and fact witness Freeman, together with other circumstantial evidence raises a fact issue as to causation.

The components of proximate cause are cause in fact and foreseeability. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam). The test for cause in fact, or "but for causation," is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *Id*. A finding of cause in fact may be based on either direct or circumstantial evidence, but cannot be supported by mere conjecture, guess, or speculation. *Id*.

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine fact issue as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer &*

---

[2] Schultz has not briefed any arguments challenging the trial court's summary judgment as to the negligence-per-se theory or the negligent-hiring theory.

*Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam). When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## A. Is there a genuine fact issue as to causation?

Schultz retained Carrick to provide expert opinions concerning the Tow Hook's flight path. In his summary-judgment affidavit, Carrick testifies that all of his opinions "have been to a reasonable degree of engineering probability." Carrick states that, based on the documents and sources of information that Carrick reviewed (the "Information"), his personal education, training and experience, and his application of his personal education, training, and experience to the facts he learned from the Information, it is Carrick's expert opinion, to a reasonable degree of engineering certainty, that the Tow Hook originated approximately 45 feet from the point of impact with the Truck.

In Carrick's opinion, the Tow Hook struck the Truck's windshield because another vehicle drove over the Tow Hook in the area depicted in Diagrams 1, 2, and 3 in Carrick's affidavit. Diagrams 1 and 2, reprinted below, show Carrick's conception of the Tow Hook's trajectory and origin, respectively:



**Diagram 1**: Front view of tow hook trajectory from origin to impact with Ford

**Diagram 2:** Overhead view of area of origin of tow hook.

Carrick states that "[t]he area depicted in Diagram 2 describes an[] arc of a circle (from the overhead view) whose circumference is at a distance from the impact area that meets a series of projectile motion equations that fit the two known areas through which the [Tow Hook] passed - namely the impact area on the windshield and the area described by Mr. Freeman prior to the impact." Carrick considered origination points that involved trajectories straight across the roadway as well as rearward trajectories. Carrick also considered and ruled out alternative scenarios and trajectories based upon the facts and evidence in this case, his experience and training, and standard engineering principles and practices.

According to Carrick, photographs of the Truck show that the Tow Hook landed in the Truck's windshield at approximately 4.75 feet above the ground. Carrick relied on Freeman's testimony that the Tow Hook was moving from "left to right" and that the Tow Hook was moving downward, or "falling," before impact. Carrick noted that the Tow Hook's dimensions are approximately 8″ x 4.5″ x 1.5″ and its weight is approximately five pounds.

Carrick stated that he used recognized and accepted standard engineering principles — namely projectile motion equations — to determine that (a) the Tow Hook would have traveled a horizontal distance of over fifty-four feet from launch to landing had it not encountered the Truck and (b) the Tow Hook would have impacted the Truck over 45 feet from its initial launch point. Carrick recited in his affidavit four equations that he says he used to calculate the distance that the Tow Hook traveled.

Carrick stated that he chose these equations because they represent the recognized standard equations used for describing an article in motion through the air. According to Carrick, these are "the correct and the only sets of equations to define the projectile motion of the [Tow Hook]." Carrick stated that "[w]ith these

9

equations, and knowing the [Tow Hook] passed through a vertical height (or displacement) of approximately 6 feet (as determined through Freeman [sic] testimony and [Truck] vehicle specifications) and 4.75 feet (as determined through study of the [Truck] photographs and measurements) a fit for the actual flight path of the [Tow Hook] was found."

Based on Carrick's review of the documents and evidence in this case, including the deposition testimony, the police report, and the 911 call transcripts, and based on Carrick's knowledge and experience regarding vehicle position while traveling on highways, Carrick concluded that the Truck was traveling in the third lane from the Left Shoulder at the time of impact. Carrick stated that the Truck's "left/right location" within this lane was not critical to his analysis, and so he presumed that the Truck was centered in the third lane at the time of impact.

Carrick considered and evaluated all areas within a 45-foot radius from the point of impact, as shown on Diagram 2. Carrick excluded most of this area based on "physical impossibility/improbability and the evidence and testimony which indicates that the [Tow Hook] came from the left." Based on his review of the evidence, his reconstruction and analysis, and his experience and training, Carrick considered and ruled out the possibility that the Tow Hook came from above the Truck, the active lanes of traffic, or an area to the right of the Truck. According to Carrick, Freeman's testimony, Carrick's flight-path calculations, and the damage inside of the Truck's "A-pillar" provided evidence that the Tow Hook had significant left-to-right velocity, causing it to strike and damage the inside of the Truck's "A-pillar." Carrick stated that this damage would not be expected with motion from the right, front, overhead, or nominally left positions.

Carrick determined that the Tow Hook originated from the Left Shoulder, as opposed to lanes of traffic to the left of the Truck based on the "significant

10

amounts of debris identified all along the left shoulder in the area of the impact." Carrick based his conclusions on his review of site photographs showing "a significant amount of debris all along the left shoulder of the roadway." Carrick also stated that "it is very common for debris to come to final rest on the shoulder, with the lanes being clear." Carrick stated that his conclusions are consistent with Freeman's testimony that there were no vehicles in front of the Truck and that the Tow Hook fell from left to right.

According to Carrick, "it was determined that to a reasonable degree of engineering certainty, the area of origin of the [Tow Hook] was the [Left Shoulder] within [Lone Star's] construction zone." In Carrick's opinion, the Tow Hook struck the Truck's windshield because a moving vehicle struck the Tow Hook somewhere in part of the Left Shoulder depicted in Diagram 2, launching the Tow Hook on the 45-foot flight path depicted in Diagram 1. Because Carrick concluded that the Tow Hook was launched from a part of the Left Shoulder within Lone Star's work zone and within Lone Star's control, Carrick concluded that Lone Star's failure to properly clear the debris, including the Tow Hook, from its work zone was a proximate cause of the incident in question and Zachary Schultz's resulting injuries and damages.

After concluding that the point from which the Tow Hook was launched was within the part of the Left Shoulder indicated in Diagram 2, Carrick then assumed that another vehicle drove over the Tow Hook in this area, launching it towards the Truck.

Courts must rigorously examine the validity of the facts and assumptions on which expert testimony is based. *Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 832 (Tex. 2014). If an expert's opinion is based on an assumption about the facts, courts cannot disregard evidence showing that

11

assumption to be unfounded. *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005). Expert opinions must be supported by facts in evidence, not conjecture. *See Pitzner*, 106 S.W.3d at 729. When an expert's opinion is based on an assumed fact that varies materially from the actual facts, the opinion lacks probative value and cannot raise a genuine fact issue. *See Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). If the record contains no evidence supporting an expert's material factual assumptions, or if such assumptions are contrary to conclusively proven facts, opinion testimony founded on those assumptions is not competent evidence. *Houston Unlimited, Inc.*, 443 S.W.3d at 833.

Freeman, the only eyewitness to the accident able to testify, told a police officer shortly after the accident that there were no other vehicles around him at the time of the accident. At his deposition, Freeman testified that "three to five car lengths is probably the closest vehicle to us." Yet, Carrick presumed that a vehicle drove over the Tow Hook in the area shown in Diagram 2. A vehicle in this area would have been less than three car lengths from the Truck. In addition, a vehicle traveling on Interstate 10 either entirely within the Left Shoulder or partly within the Left Shoulder would have been out of the ordinary; yet, Freeman testified that up until the time of the accident, nothing out of the ordinary occurred. Because Carrick's opinion that the Tow Hook was launched from the Left Shoulder is based on an assumed fact that varies materially from the actual facts, the opinion is without probative value and cannot raise a genuine fact issue. *See City of Keller*, 168 S.W.3d at 813; *Burroughs Wellcome Co.*, 907 S.W.2d at 499. The record contains no summary-judgment evidence supporting the assumption that a vehicle drove over the Tow Hook in the area shown in Diagram 2, and Freeman's testimony contradicts this assumption. Therefore, Carrick's testimony founded on this assumption is not competent evidence. *Houston Unlimited, Inc.*, 443 S.W.3d

at 833–34.

As to Freeman's testimony concerning the possibility that a vehicle on the westbound side of Interstate 10 drove over the Tow Hook and launched it towards the Truck, Freeman said that he did not know about the westbound traffic. Freeman testified that due to a barrier, he could not see the westbound traffic.[3] In his affidavit testimony, Carrick did not expressly exclude the westbound side of Interstate 10 as the launching point for the Tow Hook. Carrick did not need to do so because, as shown by Diagram 2, the launch point could not have been on the westbound side if the Truck were in the third lane from the Left Shoulder and if the Tow Hook traveled 45 feet from its launching point to the point of impact with the Truck, as Carrick concluded.

We presume that the Truck was in the third lane from the Left Shoulder,[4] and we now examine Carrick's conclusion that the Tow Hook traveled 45 feet from its launching point to the point of impact with the Truck.

Even presuming that the Tow Hook was six feet off the ground when Freeman saw it traveling left to right, Carrick did not state how far away from the Truck the Tow Hook was when it was six feet off the ground, and Freeman did not testify on this point. Carrick did not state that there was any evidence as to how much time elapsed between the point at which the Tow Hook was six feet off the ground and the point at which it landed in the Truck at 4.75 feet off the ground. Freeman did not testify as to how much time elapsed, though he insisted that it was "seconds." Carrick did not state that he based any calculation on the time lapse

_____

[3] Freeman testified that he does not know from where the Tow Hook came.

[4] Freeman testified that he thought the Truck was traveling in the third lane from the Left Shoulder. Freeman also testified that he was either in the second lane from the Left Shoulder or the third lane from the Left Shoulder, and he does not remember which of the two lanes he was in at the time of the impact with the Tow Hook.

between the point at which the Tow Hook was six feet off the ground and the point at which it landed in the Truck at 4.75 feet off the ground.

Carrick stated that he used four projectile motion equations to determine that (a) the Tow Hook would have traveled a horizontal distance of over fifty-four feet from launch to landing had it not encountered the Truck and (b) the Tow Hook would have impacted the Truck over 45 feet from its initial launch point. According to Carrick, he made these determinations using the following equations:

$V_{xo} = V_o * \cos (\Theta)$; Initial velocity in the x-direction

$V_{yo} = V_o * \sin (\Theta)$; Initial velocity in the y-direction

$\Delta_y = V_{yo} * t - \frac{1}{2} * g * t^2$; Displacement in the y-direction

$\Delta_x = V_{xo} * t$; Displacement in the x-direction

Carrick stated that "[a]ll engineering and physics standards and practitioners will, in all cases, confirm that [the above four equations] are indeed the correct and the only sets of equations to define the projectile motion of the [Tow Hook]." Carrick states in a conclusory manner that "[w]ith these equations, and knowing the [Tow Hook] passed through a vertical height (or displacement) of approximately 6 feet (as determined through Freeman [sic] testimony and [Truck] vehicle specifications) and 4.75 feet (as determined through study of the [Truck] photographs and measurements) a fit for the actual flight path of the [Tow Hook] was found."

Carrick does not state any of his calculations, nor does he define any of the variables in the four equations. Carrick does not state what values he used for "$V_o$" and "$\Theta$" in the first two equations or how he determined these values. For example, if $V_o$ were to represent the initial velocity of the Tow Hook and $\Theta$ were to represent the angle from the horizontal at which the Tow Hook was launched, Carrick does not state how he knows the initial velocity of the Tow Hook or the

14

angle at which the Tow Hook was launched. Carrick does not state what value he used for "t" in the third and fourth equations. If "t" represents time, Carrick does not state how he knows how much time elapsed.

Presuming for the sake of argument that the Tow Hook was six feet off the ground when Freeman saw it traveling left to right, Carrick does not say in his affidavit that he knows or has determined any of the following values:

(1) the velocity of the vehicle that allegedly launched the Tow Hook;

(2) the force applied to the Tow Hook to launch it;

(3) the Tow Hook's initial velocity in any direction;

(4) the distance between the Truck and the Tow Hook when the Tow Hook was six feet off the ground;[5]

(5) the time elapsed between the point at which the Tow Hook was six feet off the ground and the point at which it landed in the Truck at 4.75 feet off the ground; and

(6) the Tow Hook's velocity at any point during its flight path.

Carrick does not demonstrate the link between his conclusion that the Tow Hook traveled 45 feet and the data about the Tow Hook when it was six feet off the ground and when it landed in the Truck. On its face, the basis Carrick offered for his opinion that the Tow Hook traveled 45 feet from its launching point to the point of impact with the Truck does not support the opinion. *See Houston Unlimited, Inc.*, 443 S.W.3d at 829; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–18 (Tex. 2009). On the face of the record, we can only conclude that Carrick's opinion testimony that the Tow Hook traveled 45 feet from launch to impact is conclusory and speculative and thus incompetent evidence. *See Houston*

_____

[5] Based on Freeman's testimony, Carrick concluded that the Truck was traveling 88 to 95 feet per second.

*Unlimited, Inc.*, 443 S.W.3d at 829–32; *Pollock*, 284 S.W.3d at 816–18. We reach this conclusion without considering any challenge to Carrick's underlying methodology. *See Pollock*, 284 S.W.3d at 816–18.

Incompetent evidence cannot raise a fact issue precluding a summary judgment. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013). Schultz cites *English v. Miller* and similar cases for the principle that "[a] cause being shown which might produce an accident, and it further appearing that an accident of that particular character did occur, it is a warrantable inference, in the absence of showing of other cause, that the one known was the operative agency in bringing about such result." *English v. Miller*, 43 S.W.2d 642, 644 (Tex. Civ. App.— Amarillo 1931, writ ref'd). But, in today's case there is no "absence of showing of other cause." *See id*. Other possibilities exist. For example, a vehicle on the westbound side of Interstate 10 may have driven over the Tow Hook and launched it towards the Truck.

Schultz also cites *TXI Transportation Company v. Hughes*. *See* 306 S.W.3d 230, 236–37 (Tex. 2010). In *TXI Transportation*, the expert provided observations, measurements, and calculations based on the "physical evidence" that supported his conclusions and theory. *See id*. at 240. The expert's testimony was neither conclusory nor subjective. *See id*. The *TXI Transportation* case is not on point. *See id*. at 239–40.

Schultz relies upon *Ford Motor Company v. Ledesma* as support. *See* 306 S.W.3d 230, 237–40 (Tex. 2010). In *Ledesma*, the expert testified extensively about his theory, explained how the alleged defect caused the accident, and supported his opinions with observations and measurements based on the physical evidence and other facts. *See TXI Transportation Co.*, 306 S.W.3d at 239–40; *Ledesma*, 306 S.W.3d at 237–40. The *Ledesma* court determined that the trial court did not abuse its discretion in admitting expert testimony over the

defendant's objection that the testimony was unreliable; the court did not address whether the expert testimony was conclusory or speculative. *See Ledesma*, 306 S.W.3d at 237–40. The *Ledesma* case is not on point.

Under the applicable standard of review, we conclude that the summary-judgment evidence does not raise a genuine fact issue as to whether the point from which the Tow Hook was launched was within the Left Shoulder or as to whether an act or omission of Lone Star served as a substantial factor in causing injury to Zachary, without which the harm would not have occurred. *See Pollock*, 284 S.W.3d at 816–19; *City of Keller*, 168 S.W.3d at 813; *Pitzner*, 106 S.W.3d at 729; *Burroughs Wellcome Co.*, 907 S.W.2d at 499–500. Accordingly, the trial court did not err in granting summary judgment as to Schultz's theories of negligence under the negligence claim on the ground that there was no evidence of proximate cause. *See Pollock*, 284 S.W.3d at 816–19; *City of Keller*, 168 S.W.3d at 813; *Pitzner*, 106 S.W.3d at 727–30; *Burroughs Wellcome Co.*, 907 S.W.2d at 499–500.

## B.     Is there a genuine fact issue as to gross negligence?

Schultz alleged gross negligence as a potential basis for recovering exemplary damages in addition to actual damages based on the negligence claim. In this context, Schultz's allegation of gross negligence is not a claim separate from the negligence claim, and Schultz cannot recover exemplary damages unless Schultz first recovers on the negligence claim. *See Said v. Sugar Creek Country Club, Inc.*, No. 14-17-00079-CV, 2018 WL 4177859, at *5 (Tex. App.—Houston [14th Dist.] Aug. 31, 2018, pet. denied). Thus, a summary-judgment ground supporting dismissal of Schultz's negligence claim suffices to support the dismissal of the part of her negligence claim in which she seeks to recover exemplary damages based on an allegation of gross negligence. *See id.* As discussed above, the trial court did not err in granting summary judgment as to

17

Schultz's negligence claim. Because Schultz may not recover as a matter of law on the negligence claim, Schultz cannot recover exemplary damages based on the gross-negligence allegation. *See id.* at *6. Thus, Lone Star's summary-judgment ground is sufficiently broad to support the trial court's dismissal of the part of Schultz's negligence claim in which Schultz seeks to recover exemplary damages based on the gross-negligence allegation. *See id.* Accordingly, the trial court did not err in granting summary judgment as to Schultz's request for exemplary damages. *See id.*

## III. CONCLUSION

The summary-judgment evidence does not raise a genuine fact issue as to whether the Tow Hook's launch point fell within the Left Shoulder or as to whether Lone Star's act or omission served as a substantial factor in causing Zachary's injuries, without which the harm would not have occurred. Therefore, the trial court did not err in granting summary judgment as to Schultz's negligence claim on the no-evidence-of-proximate-cause ground. And, because Schultz may not recover as a matter of law on the negligence claim, Schultz cannot recover exemplary damages based on the gross-negligence allegation.

We overrule Schulz's sole issue and affirm the trial court's judgment.


/s/      Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Jewell and Poissant. (Poissant, J., dissenting).

18